STATE OF NEBRASKA, APPELLEE, V.
BOBBY J. JACKSON, APPELLANT.

308 N.W. 2d 527

Filed July 17, 1981. No. 43749.

H. Jerome Kinney for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, Retired District Judge.

WHITE, J.

The defendant, Bobby J. Jackson, was convicted in the District Court for Douglas County, Nebraska, on an information charging him with the offense of robbery and use of a firearm to commit a felony. The defendant was sentenced to a term of 10 to 15 years in the Nebraska Penal and Correctional Complex for the offense of robbery and to a term of 3 to 5 years in the complex for the use of a firearm, the

sentences to be served consecutively and consecutive to a sentence defendant was then serving for burglary. The defendant appeals to this court and assigns as error: (1) The District Court erred in overruling a motion to suppress the identification of the defendant which the defendant alleges was unduly suggestive and prejudicial; (2) The District Court erred in failing to dismiss both counts of the information for the reason that the evidence was, as a matter of law, insufficient to prove the essential elements of the crimes of robbery and use of a firearm in the commission of a felony; and (3) The sentences were excessive. We affirm.

On March 30, 1980, Bruce Kirk, an employee of the Crest Service Station located at 5717 No. 60th Street, Omaha, Nebraska, was on duty at approximately 8:25 a.m. at Crest. The office of the service station was locked and Kirk was requested by the defendant to be allowed to come into the office to use a pay telephone. Kirk complied. The defendant came into the station, used the telephone, produced a gun, and demanded that Kirk give him money. Kirk was not convinced that the gun was real and informed the robber that he thought he was kidding. When the defendant pointed the firearm at the window of the station and discharged it, causing a bullet to pass through the glass of the service station window, Kirk then produced the bills and the defendant fled. Kirk called the police and described the robber as a black male, approximately 6 feet 2 inches in height, 180 pounds, wearing a long tan coat, a tan stocking cap, and a dark pair of pants. Kirk identified the defendant at trial as the man who had robbed him that morning.

Officer Martha Husebo was on duty in her cruiser that morning in the area of 56th and Ames Streets in Omaha when she received the radio call of the robbery of the Crest Service Station at 5717 No. 60th Street. The robber was described as a black male 6 feet 2 inches, around 190 pounds, wearing a brown

stocking cap, a torn brown overcoat, and dark pants, headed south on 60th Street. Officer Husebo proceeded in her cruiser west on Ames Street to 60th Street and then north on 60th Street. As she neared 5705 No. 60th Street, she observed a black male of the description just received by her over the radio. She pulled into the driveway after giving her radio location to other cruisers, told the man to stop, and the man ran. She pursued and lost him in the area. She identified the man she saw at the driveway as the defendant. When additional police arrived, Officer Husebo returned to the Crest station. Other officers began searching the areas in and around the crime scene, including a vacant lot near 58th and Fort Streets on which a number of large culverts were stored. As Officer Ben McAdams looked into one of the culverts, he saw a black male matching the description of the man who had run from Officer Husebo. McAdams ordered the man from the culvert and placed him under arrest. A search disclosed that at the place where the defendant was lying inside the culvert, the sum of $84 in bills was found. Kirk had testified that $83 or $84 was the amount taken from him in the robbery as determined by the owner of the station. The defendant was then immediately taken to the service station where the attendant Kirk was asked "if this was the man that robbed me," and Kirk answered "yes." The defendant was then taken to the Omaha police station.

At approximately 9:40 a.m. of that same day, after appropriate *Miranda* warnings were given, the defendant gave an exculpatory statement to Officer Frank O'Connor of the Omaha Police Department. The next day the same officer again spoke to the defendant, read him his *Miranda* rights, which were waived by the defendant, and told him he wished to speak to him to clear up some matters. At that time the defendant told the officer that he had been forced to commit the robbery by three other black males who claimed that he owed them some money. He stated that

he had only one bullet in the gun; that he fired the gun through the window to convince the clerk that his robbery intention was serious; that after he came out of the Crest station the three black males who had forced him to commit the robbery were gone; and that he threw the gun away "somewhere, he wasn't sure where." He was eventually arrested.

The testimony of Officer John L. Powers, who is experienced in ballistics, testified that the hole in the window of the Crest station had been caused by someone firing a gun from the inside of the store. No gun was produced at trial.

Essentially, the defense offered by the defendant was that of alibi. The exculpatory and incriminating statements of the defendant were challenged at a pretrial suppression hearing. The trial court found that the defendant had been apprised of his constitutional rights, had waived those rights, and the statements were voluntarily and intelligently given to the police. It denied the suppression motion. The statements were admitted at trial and that ruling is not here attacked.

With respect to the first assignment of error, the trial court held: "I have considered it, went over my notes very carefully covering the circumstances surrounding the identification of the Defendant. The evidence convinces me that constitutional due process rights of the Defendant were in no way infringed and were not violated. I find that there was no substantial likelihood of misidentification, and overrule your motion to suppress the testimony of Bruce Kirk concerning the identification. I find that Bruce Kirk was in such close proximity to the Defendant that he could easily make the identification, he had an opportunity to observe the Defendant, his description as given by him coordinated in essential respects with the general characteristics of the Defendant; that the confrontation occurred very shortly after the alleged crime, that Bruce Kirk

was able to make a positive identification in this courtroom without qualification or limitation; that at the time the confrontation took place the evidence convinces me that Kirk did not know that the money had been recovered, that Kirk, when asked to make the identification, did so without any improper suggestion in terms of being able to view the Defendant for purposes of identification. Your motion is overruled."

We note, in passing, first that the trial was one to the court; that for the purpose of convenience, the trial court consolidated the hearing on the pretrial lineup and the trial in chief. The trial court found, and the record is clear that it had a sufficient basis for doing so, that the witness Kirk had a clear and independent recollection of the defendant quite apart from any pretrial showup. The in-court identification was based on the witness' observations of the defendant at the time of the robbery, not at the time of showup, and it is therefore admissible. *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

The criteria for determining whether identification testimony will be admissible after a suggestive lineup are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). The evidence clearly supports the finding of the trial judge that the in-court identification was admissible. The assignment of error is without merit.

The second assignment of error is equally without merit. In addition to the eyewitness identification of the defendant and his confession, the defendant was identified and ran from a police officer near the area where the robbery took place; he was found hiding in

the area; and the amount of money, almost identical with the amount claimed as stolen, was recovered. The allegation that there is insufficient evidence to convict on the crime of robbery is so nonmeritorious as to approach being frivolous.

The assignment of error with respect to the alleged insufficient evidence of the crime of use of a firearm in the commission of a felony is equally without merit. Defendant apparently argues that since the revolver was not recovered, a conviction cannot be had with respect to this offense. He argues that there was no proof, other than the testimony of the victim of the robbery, as to when the bullet hole was put in the window of the Crest Service Station. He suggests that while the testimony of the officer established that a bullet had indeed been fired from the inside to the outside of the window, the time when it was fired can only be established by Kirk, the victim, and that somehow this eyewitness testimony is not sufficient. We have recently considered the argument that we should not affirm a conviction where the sole and only evidence with respect to the crime comes from an eyewitness because of the supposed inherent unreliability of eyewitness testimony. We rejected that contention in *State v. Ammons,* 208 Neb. 812, 305 N.W.2d 812 (1981); *State v. Franklin, ante* p. 281, 307 N.W.2d 513 (1981). The eyewitness testimony in this case is shown to be greatly reliable. The assignment of error is also without merit.

The third assignment of error suggests that the sentences were excessive in that they are to be served consecutive to each other and consecutive to a sentence defendant was already serving for burglary. Robbery is a Class II felony and is punishable by imprisonment of from 1 year to 50 years. The use of a firearm to commit a felony is a Class III felony punishable by 1 year to 20 years of imprisonment, or a fine of up to $25,000, or both such fine and imprisonment. Each of the sentences was well within the statutory limits.

A sentence imposed which is within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Kramer*, 203 Neb. 658, 279 N.W.2d 634 (1979). Upon conviction for the use of a firearm to commit a felony, the statute requires that any sentence is to be served consecutive to any other sentence imposed.

The defendant, in addition to a number of convictions for traffic violations, has had two convictions for disorderly conduct and two prior convictions for burglary. The trial judge at sentencing found that the defendant would probably engage in additional criminal conduct if he were not in jail because the crimes he had just been convicted of were committed while he was out on bond on another burglary charge. He found that any lesser sentence would indicate to the public that such crimes were not treated seriously by the court. He expressed concern over the escalation of the crimes committed by the defendant and the continued insistence by defendant that he was not involved. We agree with the trial court. The assignment of error is without merit.

The judgment and sentence of the defendant are affirmed.

AFFIRMED.